WILLIAMS, J.
*1260 The plaintiffs, Briarwood, LLC, Riemer Calhoun, Jr., and Marcia Calhoun, appeal a summary judgment in favor of the defendants, Hope Calhoun, Chesapeake Louisiana, LP, Carolyn Huckabay and Thomas Calhoun. The district court determined that Marcia and Riemer Calhoun had transferred their individual mineral interests in June 2010 and that the mineral leases are valid. For the following reasons, we reverse and remand for further proceedings.
FACTS
In May 1986, Hope Calhoun ("Hope"), Carolyn Calhoun Huckabay ("Carolyn") and Thomas Calhoun ("Thomas") each owned an undivided 1/3 interest in a 105-acre tract of land described as the South 1/2 of Section 34, Township 13 North, Range 11 West, lying North and East of Boggy Bayou and North and West of Butler's Slough, Red River Parish ("the property"). Hope was the wife of Riemer Calhoun, Sr., who was the father of Carolyn and Thomas.
In November 1988, Thomas conveyed his undivided interest in the property to Hope, Carolyn and Riemer Calhoun, Jr. ("Reimer"), and his wife Marcia Calhoun, who had previously established a separate property regime. Two months later, Carolyn and Riemer conveyed their undivided interests in the property to Hope as her separate property. In August 1995, Riemer Calhoun, Sr., died owning a 1/18th interest in the property. This interest passed equally to his surviving spouse, Hope, and his children, Riemer, Carolyn and Thomas, resulting in Hope owning a 65/72 interest in the property, Marcia owning a 4/72 interest, with Riemer, Carolyn and Thomas each owning a 1/72 interest.
In October 2004, Hope conveyed all of her interest in the "non-executive mineral rights" to RCSR, LLC ("RCSR"). In the conveyance, Hope reserved to herself the executive right to the mineral rights, "specifically reserving the right to grant mineral leases" as to her interest in the property. In February 2008, Hope executed a mineral lease covering 69 acres of the property with the lessee, Meagher Oil & Gas Properties, Inc. One year later, the lessee assigned the lease to Chesapeake Louisiana, L.P. ("Chesapeake").
In June 2010, RCSR transferred its non-executive mineral rights in the property in equal portions to Thomas, CCH Investments, LLC ("CCH") and Briarwood Group, LLC ("Briarwood"). This 2010 transfer provided that Hope, Thomas, CCH and Briarwood would each receive a 25% royalty interest and that Hope's royalty and executive right to the minerals would terminate at her death. The 2010 transfer was made subject to all valid and subsisting mineral leases which had been executed by any of the parties. On the signature page of the transfer, Marcia signed above language stating "Marcia Calhoun, member and manager of RCSR, LLC; member and manager of Briarwood Group, LLC and individually." Riemer signed the transfer above language stating "member and manager of Briarwood Group, LLC and individually." In September 2010, Hope signed a mineral lease with the lessee, Chesapeake, covering 36 acres of the property.
In August 2013, the plaintiff, Briarwood, filed a petition for declaratory judgment against the defendants, Hope and Chesapeake, alleging that Hope did not have the right to grant the 2010 mineral lease. After Chesapeake filed a motion for summary judgment, plaintiff filed the first amended petition adding Riemer and Marcia as party plaintiffs. Chesapeake's motion was continued. The second amended petition added Carolyn and Thomas as defendants. Plaintiffs sought cancellation of the 2008 *1261 and 2010 mineral leases to the extent they covered the alleged separate interests in the property owned by Riemer and Marcia. The defendants filed motions for summary judgment on the ground that Hope owned 100% of the executive right in the property when she executed the 2008 and 2010 mineral leases. Alternatively, Chesapeake sought partial summary judgment on the basis that Hope owned at least 65/72 of the property when she granted the mineral leases.
After a hearing, the district court issued an opinion that the individual interests of Riemer and Marcia were included in the 2010 transfer of mineral rights because they signed the document in their individual capacity. The district court rendered summary judgment in favor of the defendants, dismissing the plaintiffs' claims. The plaintiffs appeal the judgment.
DISCUSSION
The plaintiffs contend the district court erred in granting summary judgment in favor of the defendants. Plaintiffs argue that summary judgment is not appropriate because an issue of material fact exists as to whether Marcia and Riemer Calhoun intended to convey their individual interests in the property by signing the 2010 transfer of mineral rights.
The owners of separate mineral rights in the same land must exercise their respective rights with reasonable regard for the rights of other owners. La. R.S. 31:11. The owner of land may protect his rights in minerals against trespass, damage and other wrongful acts of interference by all means available for the protection of ownership. La. R.S. 31:12. A landowner may convey, reserve or lease his right to explore and develop his land for production of minerals and to reduce them to possession. La. R.S. 31:15. The executive right is the exclusive right to grant mineral leases of specified land or mineral rights. The owner of the executive right may lease the land or mineral rights over which he has power to the same extent as the owner of a mineral servitude. La. R.S. 31:105.
Appellate courts review summary judgments de novo , using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Whitaker v. City of Bossier City , 35,972 (La. App. 2 Cir. 4/5/02), 813 So.2d 1269. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
Summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge or malice. Jones v. Estate of Santiago , 2003-1424 (La. 4/14/04), 870 So.2d 1002 ; Benson v. State , 48,300 (La. App. 2 Cir. 10/9/13), 124 So.3d 544. One reason is that such factual determinations call for credibility evaluations and the weighing of testimony. Benson, supra . Summary judgment is inappropriate when there is a factual dispute as to intent. Harris v. Dunn , 45,619 (La. App. 2 Cir. 9/22/10), 48 So.3d 367.
In the present case, the plaintiffs produced evidence that after a number of transactions among the parties, Hope owned a 65/72 interest in the property, with Marcia owning a 4/72 interest and Riemer owning a 1/72 interest. The evidence presented by defendants did not specifically negate the asserted ownership interests of Marcia and Riemer. Instead, defendants submitted deposition testimony from another case involving these parties to support the argument that Marcia and Riemer intended to convey any mineral interest they owned by signing above *1262 the word "individually" in the 2010 transfer of mineral rights.
The 2010 transfer of mineral rights provides that RCSR, as the sole transferor, does "convey and deliver to CCH, Briarwood and Tommy ... all of transferor's mineral rights in and to" the tract in question. The document states that the "transfer of the property above described is made to CCH, Briarwood and Tommy in the portions of an undivided one-third interest each." The 2010 transfer provides that the transferor conveys to Hope a 25% mineral royalty and that a royalty of 25% each shall be paid to CCH, Briarwood and Tommy. The 2010 transfer further provides that Hope's royalty and the executive right which she retained in the prior conveyance to RCSR shall terminate upon her death.
The defendants contend the intent of the parties in executing the 2010 transfer of mineral rights was to recognize that Hope owned 100% of the executive right in the property. Contrary to the defendants' contention, the 2010 transfer language specifically refers to a conveyance of RCSR's mineral rights; the instrument does not provide, as it easily could have, that Hope is the owner of 100% of the executive right and does not expressly mention any conveyance of the individual interests owned by Marcia and Riemer.
Even though the language of the 2010 transfer does not expressly convey the ownership interests of Marcia and Riemer in the property, defendants assert that the intent of Marcia and Riemer to convey their property interests is shown by their act of signing the 2010 transfer in an individual capacity. However, the authority cited by defendants in their briefs does not support their assertion that an ownership interest in land is conveyed by a party's signature on an instrument which itself does not contain any express reference to that property interest. In addition, Marcia and Riemer submitted affidavits stating that they each own an individual interest in the property and did not convey their ownership interests in the 2010 transfer of mineral rights.
Based upon this record, we conclude that a genuine issue of material fact exists as to whether Marcia and Riemer intended to convey their ownership interest in the property by signing the 2010 transfer. In determining the intent of a party, the district court will be required to weigh evidence and assess the credibility of witnesses. Thus, the determination of intent is not appropriate for summary judgment and the district court erred in granting the defendants' motions for summary judgment. Consequently, we shall reverse the judgment and remand this matter for further proceedings.
CONCLUSION
For the foregoing reasons, the summary judgment is reversed. This matter is remanded to the district court for further proceedings. Costs of this appeal are assessed to the appellees, Thomas Calhoun, Hope Calhoun and Chesapeake Louisiana, L.P.
REVERSED AND REMANDED.